UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
OLUWABANKE AKINSUYI,

                Plaintiff,

            - against -

BOARD OF IMMIGRATION APPEALS,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-1462 (PKC)

PAMELA K. CHEN, United States District Judge:

This case concerns the denial of a Form I-130 Petition for Alien Relative ("Petition") filed by Plaintiff Oluwabanke Akinsuyi ("Plaintiff") on behalf of her spouse Johnson Olalekan ("Olalekan"). United States Citizenship and Immigration Services ("USCIS") denied Plaintiff's Petition, and the Board of Immigration Appeals ("BIA") (collectively, "the Agency") affirmed that decision. Plaintiff seeks review of the Agency's decision pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. The Agency filed a motion to dismiss, or, in the alternative, for summary judgment, and Plaintiff opposed the Agency's motion. For the reasons set forth below, the Agency's motion is granted and this matter is dismissed.

## BACKGROUND

### I. Relevant Facts

Plaintiff Oluwabanke Akinsuyi and Johnson Olalekan were married on April 15, 2015.[1]
Plaintiff, who is a U.S. citizen of Nigerian descent, works as a live-in home health aide in Staten

---

[1] Plaintiff's appeal to the BIA states that she and her husband were married on April 15, 2015. (BIA Appeal, Dkt 1-1, at 6.) Plaintiff's Complaint states that she and Olalekan were married on July 4, 2015. (Complaint ("Compl."), Dkt. 1, at ¶ 11.) The Court assumes that the marriage date listed in the Complaint was a typographical error because it occurred after Plaintiff filed her

Island. (Compl., at ¶ 11.) Olalekan, who is a Nigerian citizen, works as a gas station attendant in Union, New Jersey. (Certified Administrative Record ("Tr."), Dkt. 19-1, at 44.)[2] On May 5, 2015, Plaintiff filed an I-130 Petition[3] on behalf of Olalekan seeking to classify him as the spouse of a U.S. citizen. (Tr. 139.) On April 13, 2016, Plaintiff and Olalekan appeared before USCIS, where they were interviewed separately regarding the Petition. (Tr. 119-20.) On May 10, 2016, USCIS issued Plaintiff a Notice of Intent to Deny ("NOID") outlining the information considered by USCIS in support of their intended denial of the Petition and providing Plaintiff an opportunity to respond and present additional new information to support the Petition. (Tr. 118.) On May 27, 2016, Plaintiff responded to the NOID. (*See* Tr. 36.)

  A.  **The USCIS Decision**

On June 13, 2016, USCIS denied Plaintiff's visa petition, finding that she had not established, by a preponderance of the evidence, a bona fide marital relationship with Olalekan and thus had not met her burden to establish eligibility for the immigration benefit sought by Plaintiff and Olalekan. (Tr. 35 (citing *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966))). In the NOID, USCIS explained that the denial was based, in part, on the following inconsistencies that arose when an officer of USCIS interviewed Plaintiff and Olalekan on April 13, 2016:

---

Petition on May 5, 2015. The Court therefore adopts a marriage date of April 15, 2015 for the purposes of this Order.

  [2] Page numbers refer to the pagination generated by the CM/ECF system, and not the document's internal pagination.

  [3] A citizen or lawful permanent resident of the United States may file Form I-130, Petition for Alien Relative, with USCIS to establish the existence of a relationship to certain alien relatives who wish to immigrate to the United States. *Form I-130/I-130A Instructions*, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/sites/default/files/files/form/i-130instr.pdf (last visited August 21, 2018).

- You[4] stated you met your spouse[5] at Newark Penn Station and together you traveled to a Nigerian restaurant for your first date. Your spouse stated he met you at a Brooklyn movie theater to see a movie and later traveled together to a local restaurant near the movie theater.

- You stated you were living in Staten Island, New York taking care of a client when you met your spouse. Your spouse stated you lived in Brooklyn, New York with your mother when he met you.

- You stated your spouse lived at 719 8th Street in Irvington, New Jersey when you began dating. Your spouse stated he lived at 682 Cousin Avenue in Brooklyn, New York when you began dating.

- You stated you returned to work in Staten Island, New York after the wedding ceremony. Your spouse stated you traveled with him, the witnesses, and your brothers and their wives to his home after the wedding ceremony.

- You stated your spouse lives at the marital address with a roommate. You stated each person has their separate bedroom; however, the living room, kitchen, bathroom is shared space. Your spouse stated he lives at the marital address with you. Your spouse stated there are two apartments on each floor of the residence and each apartment has their own bedroom, living room, kitchen, bathroom, etc.

- You stated you work as a live-in home health aide seven (7) days per week. You stated only occasionally will you have a weekend off from work. Your spouse also stated you work as a live-in home health aide; however, your spouse stated you work Monday through Friday and have every weekend off.

- You stated in the marital address the floors are carpeted. Your spouse stated the floors at marital address are wood.

- You stated your spouse has two (2) children. You stated you have never spoken to either of the children. Your spouse stated you have spoken to his children.

- You stated your spouse's children live with their mother. Your spouse stated his children live with his mother.

---

[4] "You" refers to Plaintiff Oluwabanke Akinsuyi.

[5] "Your spouse" refers to Johnson Olalekan.

3

- You stated you have never assisted your spouse with the financial support of his children. Your spouse stated you provided the money to support his children prior to him working.

- You stated you have never spoken to either of your spouse's parents. Your spouse stated you have spoken to his mother.

- You stated your spouse has never spoken to your parents. Your spouse stated he has spoken to your mother.

- You stated you are not aware if your spouse has any siblings. Your spouse stated he has five brothers and two sisters.

- You stated you receive medical benefits through your employer. Your spouse was unaware if you have medical insurance.

- You stated you and your spouse had a life insurance policy although you could not recall the name. Your spouse stated neither of you has ever owned a life insurance policy.

(Tr. 33-34.)

USCIS further explained that none of the supporting documents submitted by Plaintiff resolved the inconsistencies in her Petition. (Tr. 34.) USCIS noted that Plaintiff submitted the following documents in response to the NOID:

- An affidavit from friend Sunday Bada;
- A letter from Amica Life Insurance Company;
- A letter from Pastor Gabriel Ajenifuja;
- A letter of reference from Pastor Yemi Ayeni;
- A letter from Kayode Coker;
- A letter from landlord Obiefuna Nwaneri;
- A copy of a NJ driver's license for Johnson Olalekan and NY State identification card for Oluwabanke Akinsuyi;
- Copies of receipts;
- A copy of a NY marriage certificate for Johnson Olalekan and Oluwabanke Akinsuyi; and
- Photos.

(Tr. 34.) USCIS stated that it gave little weight to these submissions because they failed to include proof of identity of the affiants and that certain letters contradicted testimony provided by Plaintiff

4

and Olalekan in their interviews. (Tr. 34.) For example, the statement provided by Sunday Bada claimed: "I attended the same church with Banke [*i.e.*, Plaintiff] before she got married, I am a regular visitor in their house almost every weekend when she (Banky) come home from work." (Tr. 35.) Yet, the USCIS decision noted that Plaintiff testified that she worked seven days a week and only occasionally had weekends off. (Tr. 35.) Additionally, the letter from Plaintiff's alleged landlord Obiefuna Nwaneri contained discrepancies in the signatures and addresses that he included.[6] (Tr. 35.) USCIS determined that these documents failed to support Plaintiff's claim of a bona fide marital relationship.

USCIS also explained that even though Plaintiff was married to Olalekan for over one year at the time of this application, there was little evidence "to support cohabitation or comingling of assets or liabilities." (Tr. 35.) Similarly, USCIS observed that the life insurance policy submitted by Plaintiff was purchased after the issuance of the NOID, and thus held less probative value. (Tr. 35.) USCIS denied Plaintiff's Petition, concluding that Plaintiff failed to overcome the testimonial discrepancies raised by the NOID and demonstrate that she had a bona fide marriage. Plaintiff appealed USCIS's decision to the BIA. (Tr. 17.)

**B.     The BIA's Decision**

On February 7, 2017, the BIA affirmed USCIS's decision and dismissed Plaintiff's appeal. (Tr. 8-9.) The BIA agreed with USCIS's determination that Plaintiff had not established by a preponderance of the evidence that her marriage to Olalekan was bona fide. (Tr. 8.) The BIA stated that the evidence submitted by Plaintiff was sparse and "insufficient to establish" that Plaintiff and Olalekan are in "a bona fide marriage." (Tr. 9.) The BIA observed that the signatures

---

[6] USCIS stated, "the lease claims to be a contract between you and your spouse and the lessor, Obiefuna Nwaneri; however, the lease was only signed by your spouse." (Tr. 3.)

5

on the lease and letter from the landlord were inconsistent and that Plaintiff only obtained the life insurance policy naming Olalekan the beneficiary after the issuance of the NOID. (Tr. 9.) The BIA found that Plaintiff and Olalekan gave "substantially inconsistent" answers to interview questions concerning their marriage. (Tr. 8.) The BIA noted that Plaintiff attempted to explain these inconsistencies by submitting medical evidence that she suffered from a memory-loss condition called hydrocephalus. The BIA chose not to consider this evidence offered for the first time on appeal, and concluded that "the petitioner did not establish that her medical condition, which she was allegedly diagnosed with many years ago, explains the inconsistencies during her relatively recent interview." (Tr. 9.) The BIA noted, however, that Plaintiff was free to file a new visa petition with USCIS and include such evidence and any other competent evidence supporting the petition.

## II. Relevant Procedural History

Plaintiff filed the Complaint on March 15, 2017. (Dkt. 1.) The Agency's motion to dismiss the complaint, or, in the alternative, for summary judgment was fully briefed on March 2, 2018. (Dkts. 17, 20, 21.)

## STANDARD OF REVIEW

## I. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## II.     Summary Judgment Under Rule 56

Summary judgment is appropriate where "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where, as here, a party seeks review of agency action under the APA and "the entire case on review is a question of law," summary judgment will generally be appropriate. *Glara Fashion, Inc. v. Holder*, 11-CV-889 (PAE), 2012 WL 352309, at *5 (S.D.N.Y. Feb. 3, 2012); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal"). "[T]he Second Circuit has allowed appeals of agency decisions to be styled as motions for summary judgment . . . while also stating that '[g]enerally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision.'" *Clifford v. U.S. Coast Guard*, 915 F. Supp. 2d 299, 307 (E.D.N.Y. 2013) (citations omitted); *see also Univ. Med. Ctr. of S. Nevada v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) (finding the question of whether an agency acted in an arbitrary and capricious manner is a legal one that the district court can resolve on the agency record, regardless

7

of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment).[7]

## DISCUSSION

**I.      Legal Standard**

Under 5 U.S.C. § 706(2)(A), a court reviewing an agency decision must hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Karpova v. Snow*, 497 F.3d 262, 267-68 (2d Cir. 2007). "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). If, however, the agency decision "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," the agency's decision must be set aside. *Westchester v. U.S. Dept. of Housing and Urban Development*, 802 F.3d 413, 431 (2d Cir. 2015) (internal quotations and citation omitted); *Karpova*, 497 F.3d at 268 (identifying same grounds for setting aside agency action as in *Westchester*, as well as the agency relying "on factors which Congress has not intended it to consider"). "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Karpova*, 497 F.3d at 268.

---

[7] Plaintiff alleges in her brief that a summary judgment motion is premature. (Plaintiff's Opposition ("Pl. Opp'n"), Dkt. 21, at 8.) As stated above, appeals of agency decisions can be presented as either motions to dismiss or motions for summary judgment.

## II.     Regulatory Background Relating to Immigration

In order for an alien to immigrate to the United States, *i.e.*, come to the United States with the intent to stay permanently, or remain in the United States and adjust their status to lawful permanent resident, he or she must generally have an immigrant visa petition approved on his or her behalf as a starting point. *See generally* 8 U.S.C. §§ 1151-54. Under Section 1154, U.S. citizens may file such petitions, including I-130 Petitions, on behalf of their immediate relatives. Immediate relatives are defined as the "children, spouses, and parents" of the citizen filing the I-130 Petition. 8 U.S.C. § 1151(b)(2)(A)(i). Once an I-130 Petition has been filed with USCIS, the agency is directed to conduct "an investigation of the facts in each case," and, "if [the agency] determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . approve the petition and forward one copy thereof to the Department of State." 8 U.S.C. § 1154(b). However, the agency is not permitted to approve an I-130 Petition if:

> (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

U.S.C. § 1154(c). This means that the agency is statutorily barred from approving any I-130 Petition filed on behalf of a non-citizen who has conspired or actually entered into a sham marriage for purposes of obtaining an immigration-related benefit. *See id.; see also Samsundar v. Mukasey*, 296 Fed. App'x 106, 107 (2d Cir. 2008). Approval of an I–130 Petition turns on whether the marriage relationship was bona fide "at its inception." *Matter of McKee*, 17 I. & N. Dec. 332 (BIA 1980) (establishing that parties' intent at time of marriage controls whether marriage was bona fide); *see also Huarcaya v. Mukasey*, 550 F.3d 224, 231 (2d Cir. 2008) ("we agree with the

9

government that marriage-based visa eligibility has always meant that a petitioner had to demonstrate that [the] marriage was bona fide.").

The adjudication process provides notice and an opportunity to respond to adverse information in the record. *See* 8 C.F.R. § 103.2(b)(8)(iv). If USCIS discovers derogatory information, which unrebutted, supports a denial, the agency will issue a NOID to the applicant. *Id.* The NOID will be in writing and "will specify . . . the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." *Id.* The NOID informs the applicant of the derogatory information at issue and affords the applicant the "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered[.]" 8 C.F.R. § 103.2(b)(16)(i).

Approval of an I–130 Petition classifies the "immediate relative" alien within a specific immigrant class, and permits the alien to apply for an immigrant visa if the alien is abroad, or to seek adjustment of status to that of a lawful permanent resident if the alien is present in the United States. 8 U.S.C. §§ 1201(a)(1), 1202(a), 1255(a). If, however, after the I–130 Petition is approved, USCIS later determines that the alien is not an "immediate relative," the Petition may be revoked effective as of the date it was approved. *See* 8 U.S.C. § 1155 (providing for petition revocation upon a finding of "good and sufficient cause"). In the event that USCIS denies an I-130 Petition, the U.S. citizen spouse may notice an administrative appeal of the decision to the BIA, which reviews all issues in such a USCIS decision *de novo*. *See* 8 C.F.R. § 1003.1(d)(3)(iii).

## III. Analysis

Plaintiff makes four arguments in seeking judicial review of the Agency's decision: (1) the Agency's decision denying the Petition was arbitrary and capricious (Pl. Opp'n, at 21); (2) the Agency inappropriately declined to consider evidence of her mental health condition of hydrocephalus that was submitted on appeal (*id.* at 12, 14); (3) the Agency applied the incorrect

burden of proof on appeal (*id.* at 5); and (4) the Agency violated Plaintiff's procedural due process rights (*id.* at 20-21). The Court addresses each of these arguments in turn.

### A. The Agency's Decision Was Not Arbitrary and Capricious

Plaintiff claims that the Agency's decision denying her Petition was arbitrary and capricious. In the immigration context, a petitioner or applicant "must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (2010) (citations omitted). The petitioner also has the burden of proving the beneficiary's eligibility, and, with respect to an I-130 Petition, "must therefore rebut any evidence of marriage fraud 'in the alien's file' with proof that the . . . marriage was bona fide, *i.e.*, not fraudulent." *Bourisquot v. Holder*, 569 Fed. App'x 35, 36 (2d Cir. 2014). "The petitioner should submit documents which cover the period of the prior marriage," including documentation showing joint property ownership or common residence, commingling of financial resources or sworn affidavits from third parties with personal knowledge of the marriage's bona fides. 8 C.F.R. § 204.2(a)(1)(i)(B).

Upon review of the Administrative Record, this Court finds that the Agency's Decision was not arbitrary, capricious, or an abuse of discretion. The Court notes that the Agency considered the relevant evidence submitted by Plaintiff at the time of its determination, including affidavits and documentation submitted subsequent to the NOID. The record contains evidence from which the Agency reasonably could infer that Plaintiff and Olalekan entered into the marriage solely for the purpose of obtaining immigration benefits. The following evidence is particularly significant: (1) considerable and irreconcilable discrepancies regarding the answers given by Plaintiff and Olalekan, particularly regarding Plaintiff's and Olalekan's home addresses, their living arrangements, and Plaintiff's interactions (or lack thereof) with Olalekan's family; (2)

11

affidavits containing inconsistent information from Plaintiff's friends and landlord; and (3) little evidence of shared finances.

The Court finds no error in the Agency's determination that Plaintiff did not resolve the inconsistencies in her Petition to show that she had a bona fide marriage. Although the record included material that was favorable to Plaintiff's Petition, including letters from pastors and family friends, the Agency concluded that, viewed as a whole, the record was insufficient for Plaintiff to show by a preponderance that the marriage was not entered into "for the purpose of evading the immigration laws." U.S.C. § 1154(c). The Agency fully considered and reasonably weighed Plaintiff's favorable evidence against other evidence in the record in reaching its determination. *Matter of Riero*, 24 I. & N. Dec. 267, 268 (BIA 2007) (for a marriage-based visa petition to be "meritorious in fact," the petition must be based on a "bona fide" and "genuine marriage in which the parties intended to share a life as husband and wife, not a marriage of convenience designed solely to confer an immigration benefit on one of the parties"). In light of the material and unresolved inconsistencies in Plaintiff's Petition, this Court cannot find that the Agency's determination was arbitrary, capricious, or an abuse of discretion.

### B. The Agency Appropriately Declined to Consider Plaintiff's Medical Evidence on Appeal

Plaintiff argues that the Agency inappropriately declined to consider evidence of her medical condition, hydrocephalus, which was submitted for the first time on appeal. Hydrocephalus is a condition involving "an abnormal accumulation of cerebrospinal fluid in the brain," leading to headaches and memory loss. (Pl. Opp'n, at 6.) Plaintiff claims that at least four

of her inconsistent responses to interview questions were caused by this medical condition, which the BIA refused to consider. (*Id.* at 14-18.)[8]

The Court finds that the Agency's refusal to consider the evidence of Plaintiff's medical condition on appeal was not improper. Plaintiff submitted evidence of her condition for the first time on appeal to the BIA, despite knowing of it since 2004. (BIA Appeal, at 6) ("Petitioner has had a long history of hydrocephalus and was so diagnosed in 2004.") Plaintiff did not mention her condition to USCIS during the visa petition process or interview. She also failed to mention the condition in response to the NOID to explain the discrepancies in her testimony. (Tr. 9.) USCIS put Plaintiff on notice that her application was deficient and she did not submit evidence of her condition in response. The Agency was therefore not required to consider Plaintiff's medical condition, given that it was raised for the first time on appeal. 8 C.F.R. § 1003.1(d)(ii)(3)(iv) ("Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the [BIA] will not engage in factfinding in the course of deciding appeals"); *Matter of Fedorenko*, 19 I. & N. Dec. 57, 74 (B.I.A. 1984) (recognizing that, as an appellate body, BIA may decline to review evidence proffered for first time on appeal); *Zedong Wang v. Sessions*, 706 Fed. App'x 5, 8 (2d Cir. 2017) (concluding that "BIA did not err in declining to consider the additional evidence [Plaintiff] submitted to the agency for the first time on appeal.")[9].

---

[8] Plaintiff says that her condition of hydrocephalus caused her to be forgetful and provide inconsistent answers to questions relating to when she and Olalekan met for the first time, where she and Olalekan lived when they began dating, whether she had ever spoken to his children, and whether she had ever spoken to his mother. (BIA Appeal, at 7-11.)

[9] Even if the Agency had considered Plaintiff's medical condition, it would not have resolved the most significant discrepancies and deficiencies in the Petition, *e.g.*, Plaintiff's and Olalekan's inconsistent statements on their living arrangements and Plaintiff's work schedule, and the dearth of Plaintiff and Olalekan's shared finances. In any event, Plaintiff has the opportunity

## C. The Agency Applied the Correct Burden of Proof

Plaintiff next argues that the Agency "repeatedly applied the wrong burden of proof and was otherwise not in accordance with law in numerous particulars." (Pl. Opp'n, at 5.) The Court disagrees: the Agency properly conducted a *de novo* review of Plaintiff's I-130 Petition (Tr. 8-9); *see* 8 C.F.R. § 1003.1(d)(3)(iii) ("The [BIA] may review all questions arising in appeals from decisions issued by [USCIS] officers de novo"). Additionally, the Agency explained that that in visa petition proceedings, Plaintiff has the burden of establishing eligibility for the benefit sought and must prove the required elements by a preponderance of the evidence. *Id.* Therefore, the Agency reviewed Plaintiff's Petition using the correct burden of proof.

## D. The Agency Did Not Violate Plaintiff's Due Process Rights

Plaintiff argues that the Agency violated Plaintiff's procedural due process rights. In her opposition, Plaintiff offers a number of general case cites concerning procedural due process, *stare decisis*, and the APA, and then states, "Plaintiff argues that the decision of the Agency denying her I-130 Petition filed on behalf of her husband was arbitrary, capricious, an abuse of discretion and not in accordance with law." (Pl. Opp'n, at 21.) Although Plaintiff offers no further analysis in support of this claim, her argument is clearer in the context of her Complaint, which alleged that the Agency "violated applicable law and the due process clause of the Fifth Amendment in not providing Oluwabanke Akinsuyi with meaningful access to alleged derogatory information and in not affording her with a trial type hearing before a neutral adjudicator on the issue of the bona fides of her marriage to Johnson Olalekan." (Compl. at ¶ 32.)

---

to file a new visa petition with USCIS that includes the medical evidence that the Agency did not consider on appeal. (Tr. 9.)

The Court finds that the Agency did not violate Plaintiff's procedural due process rights on either of the two grounds cited by Plaintiff. First, the Agency provided access to derogatory information through the NOID, as required by 8 C.F.R. § 103.2(b)(8)(iv). The NOID sufficiently notified Plaintiff, in writing, of "the bases for the proposed denial," 8 C.F.R. § 103.2(b)(8)(iv), and informed Plaintiff of the derogatory information at issue, including the inconsistencies in the interview statements given by Plaintiff and Olalekan. (Tr. 3.) Plaintiff was then given the "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." (Tr. 3) (citing 8 C.F.R. § 103.2(b)(16)(i).) Indeed, Plaintiff availed herself of the process and responded to the NOID on May 27, 2016. (*See* Tr. 36.) Thus, Plaintiff was given full access to the derogatory information and an opportunity to rebut it.

Second, the Agency was not required to afford Plaintiff a trial-like hearing before a neutral adjudicator in connection with USCIS's initial determination of eligibility. The Agency denied Plaintiff's Petition pursuant to 8 U.S.C. § 1154, which does not provide for a hearing on the record or for any other kind of formal procedure; "an investigation of the facts in each case" by the Attorney General is all that is guaranteed to applicants. 8 U.S.C. § 1154; *see also Ching v. Mayorkas*, 725 F.3d 1149, 1154 (9th Cir. 2013) (noting that there is no statutory right to an adjudicatory hearing under Section 1154); *Simko v. Bd. of Immigration Appeals*, 156 F. Supp. 3d 307-08 (D. Conn. 2015) ("Section 1154 does not provide for a hearing on the record or for any other kind of formal procedure; 'an investigation of the facts in each case' by the Attorney General is all that is guaranteed to applicants."). Because the Agency complied with Section 1154, which does not entitle I-130 petitioners to a trial or hearing, Plaintiff's due process rights were not violated.

## CONCLUSION

For the foregoing reasons, the Court grants the Agency's motion to dismiss all of Plaintiff's claims. The Court reminds Plaintiff that she may refile her Petition with USCIS in order to have the evidence of her medical condition considered on the record.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 22, 2018
Brooklyn, New York